## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | Case No. 21-CR-162-JFH |
| JUSTIN DALE LITTLE, | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court is a motion to preclude the Government's proffered 404(b) evidence ("Motion") filed by Defendant Justin Dale Little ("Defendant"). Dkt. No. 67. Defendant objects to evidence described by the United States of America ("Government") in its opposed notice of intent to offer evidence pursuant to Rule 404(b) ("Notice"). Dkt. No. 52. This evidence, according to the Government, would show that Defendant "had previously stalked his ex-girlfriend, Hannah Watkins, and that four months before murdering Johnathon Weatherford, [Defendant] had shot into Weatherford's home." *Id.* at 1. For the reasons stated, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Defendant is charged with one count of first degree murder in the killing of Johnathon Weatherford ("Weatherford") on April 22, 2018. Dkt. No. 2. The morning of the charged conduct, Weatherford had been at a residence with Hannah Watkins ("Watkins"), who had romantic history with each Weatherford and Defendant.

The Government alleges the Defendant was "obsessed with Watkins since their child was born in 2014." Dkt. No. 52 at 2. Watkins did not want a romantic relationship with Defendant after November 2014, but Defendant "pushed for them to be together for the sake of their child."

*Id.* at 3.  Although Watkins and Defendant continued to be intimate on occasion, she dated several other men in the following years.

In August 2015, Watkins spent the night on the couch at the residence of a male coworker, Leon Hong ("Hong").  She had not been to Hong's home before.  Around 4:00 a.m., Defendant appeared at Hong's residence.  Watkins was surprised because she had not told Defendant she was going to Hong's residence, she had not been to Hong's residence in the past, and Defendant had not unexpectedly appeared where Watkins was before.  During this interaction, Defendant told Watkins he was tracking her cell phone.  Watkins and Hong later began dating.  About a month after they developed a romantic relationship, Hong discovered two of his tires were flat.  In the Government's description, "He suspected [Defendant]." *Id.*

In fall 2016, Watkins dated Justin Lackey ("Lackey").  The Government describes an interaction in November that year, while Watkins and Defendant were staying with Watkins' relative in Asher, Oklahoma.  Lackey drove to Asher from Tulsa to visit.[1]

> Everything appeared amicable as Little, Lackey, and Watkins played cards before they left . . . . Little went outside, claiming to clean out his car.  About thirty minutes later, Little walked back into the house in an odd manner to avoid showing Lackey or Watkins his back.  When confronted, Little told them he fell down outside, his back was dirty, and he was trying to stop them from making fun of him.  This behavior was out of character for Little.
>
> A few minutes later, Lackey and Watkins left in his car . . . however, Lackey quickly discovered his brakes were not working and they could not stop the car.  Once the car rolled to a stop, the two returned to the house, where Lackey was able to see the brake lines were cut.  He confronted Little about cutting the line.

*Id.* at 4.

---

[1]  The Court may take judicial notice of public geographic records such as Google Maps.  *See United States v. Orozco-Rivas*, 810 F. App'x 660, 668 n.7 (10th Cir. 2020).  Google Maps shows Tulsa, Oklahoma, and Asher, Oklahoma are approximately 123 to 134 miles apart from each other.

At an unspecified time after the Lackey incident, Watkins dated Dennis Mitchell ("Mitchell").  Defendant allegedly sent "Mitchell and his friends nude and intimate photos of Watkins from their past, claiming she was currently sending them to Little."  *Id.* at 4-5.

In 2017, Watkins discovered her car had water poured in the gas tank.  Defendant allegedly told her that the water had been put in her car by Defendant's "friends who were upset they were not together."  *Id.*  Later in 2017, while Watkins was dating Weatherford, Watkins found her car set on fire.  *Id.*  This occurred within weeks after Watkins told Defendant "that whatever happened, Weatherford was going to be a part of her life and their child's life" and that "[b]ased on their history, she told Little if anything weird happened to Weatherford, she would hold him accountable."  *Id.*  The Jenks Police Department and Tulsa Fire Department investigated Watkins' car fire but were not able to determine a cause.  "Watkins told police she suspected Little."  *Id.*

On December 7, 2017, Weatherford and Watkins allegedly discovered bullet holes in his bedroom window.  *Id.* at 6.  "Weatherford told police the shots could have been from someone he shorted on a drug deal, but police believed Watkins was the target of the shooting."  *Id.*  No additional evidence was recovered, but ballistics analysis came back that the bullets involved were thirty-caliber class with markings consistent with being fired from a Remington rifle.  Defendant owned a Remington Model 783 .300 caliber Winchester Magnum.  *Id.*

On April 22, 2018, Weatherford was found laying on train tracks in Jenks, Oklahoma with a gunshot to the back.  He died later the same day.  Defendant was subsequently arrested and charged with first degree murder related to the shooting.

Defendant gave two interviews to the Jenks Police Department on April 22 and 23, 2018.[2]

The Government summarizes the relevant parts of the interview as:

> After being Mirandized, [Defendant] told detectives about his issues with Watkins's past boyfriends.  He admitted to confronting Leon Hong in 2016, but claims the two engaged in a fist fight.  He further described catching Watkins with an unidentified friend and how he almost shot them with his pistol but refrained for the sake of his son. Although he denied cutting Lackey's brake line, he confirmed the incident and that he had been confronted as the suspect.

*Id.*

## AUTHORITY AND ANALYSIS[3]

### I.    Evidence based on speculation

As an initial matter, the burden of proof for prior-act evidence under Rule 404(b) is not well established in Tenth Circuit precedent.  This contrasts with Rule 413/414 evidence of prior sexual assaults, where binding precedent clearly requires the Court to make a preliminary finding that the prior assaults did in fact happen.  *See United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1988) ("[S]imilar acts must be established by sufficient evidence to support a finding by the jury that the defendant committed the similar act.  The district court must make a preliminary finding that the jury could reasonably find by a preponderance of the evidence that the other act

---

[2]  The Court reviewed these videos as part of its consideration of Defendant's motions to suppress [Dkt. No. 54; Dkt. No. 56].  The Court denied both suppression motions.  Dkt. No. 73.

[3]  Before reaching the substance of the parties' arguments, the Court notes that Defendant claims the Government should be precluded from introducing any of the evidence in the Notice because the Notice was untimely under the Court's scheduling order.  Rule 404(b) itself only requires notice at before trial, which the Government certainly met, so any sanction would be for violation of the Court's order, not for violation of the Federal Rules of Evidence.  It is true that the Court disfavors untimely filings.  However, Defendant's argument is fatally weakened by the fact that Defendant himself failed to comply with the Court's scheduling order by filing numerous motions to suppress, as the Court recently noted.  *See* Dkt. No. 69 at 1 n.1.  Exclusion of evidence is a drastic sanction and one that the Court is not inclined to impose on the Government at this time, particularly since the Court chose not to impose sanctions on Defendant for his own noncompliance.

occurred."). Discussions of prior-act evidence generally instead involve two distinctions: first, the evidence's quality of being intrinsic or extrinsic; and second, the balance between the evidence's probative value and its unfair prejudice. However, the Court believes it does not reach either of these distinctions about several of the occasions described in the Government's Notice.

The Government's own descriptions rely on speculation and conjecture for several prior bad acts. For instance, the Government says that "Hong suspected Defendant" cut his tires, but the Government does not describe any evidence beyond this suspicion. Similarly, the Government says "Watkins . . . suspected [Defendant]" set fire to her car, but Jenks Police Department and Tulsa Fire Department could not determine the cause of the fire. And Weatherford told investigators that he believed it was a customer shorted on a drug deal who shot at the bedroom where he and Watkins slept, not Defendant. Although "police believed Watkins was the target of the shooting," the Government does not state that anything substantiated this belief.[4] Rule 404(b) is not meant to invite speculation. *See United States v. Cody*, 22-CR-63-JFH, 2022 WL 2333493, at *5 (N.D. Okla. June 28, 2022). The Court will grant Defendant's Motion as far as it applies to these unsubstantiated suspicions.

## II.    Evidence based on personal knowledge

The remaining events from the Government's Notice include the August 2015 incident where Defendant appeared at Hong's residence after tracking Watkins' location there through her cell phone; the November 2016 incident where Defendant acted strangely upon returning from being outside (including sheltering his back from view) and Watkins and Lackey shortly thereafter

---

[4]  The Government's remark that ballistics analysis indicated a thirty-caliber bullet shot from a Remington rifle is insufficient without any further evidence connecting it to Defendant. Although the Government states Defendant owned a .300 caliber Remington rifle, Remington rifles are not uncommon in Oklahoma.

discovered the brakes on Lackey's car had been cut; incidents in unspecified timeframes where Defendant sent Mitchell and his friends nude photographs of Watkins; and the 2017 incident where Watkins discovered her car had water in the gas tank and Defendant allegedly told her that the water had been put there by Defendant's "friends who were upset they were not together."

When considering admissibility of prior bad acts, the Court must "distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)).  Intrinsic evidence is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury."  *United States v. Murry*, 31 F.4th 1274, 1290-91 (10th Cir. 2022) (quotations omitted).  It takes many forms, such as evidence that:

- Is "inextricably intertwined with the charged conduct;"

- Occurs "within the same time frame as the activity in the conspiracy being charged;"

- Is "a necessary preliminary to the charged [crimes];"

- Provides "direct proof of the defendant's involvement with the charged crimes;"

- Is "entirely germane background information, directly connected to the factual circumstances of the crime;" or

- Is "necessary to provide the jury with background and context of the nature of the defendant's relationship to [other actors]."

*United States v. Cushing*, 10 F.4th 1055, 1075-76 (10th Cir. 2021) (citing *Kupfer*, 797 F.3d at 1238).  If the Court determines evidence is intrinsic, it must conduct a Rule 403 analysis to determine that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice.  *Irving*, 665 F.3d at 1212.  Conversely, extrinsic evidence "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense."

*Murry*, 31 F.4th at 1291.  If the Court determines the evidence at issue is extrinsic, it must conduct a Rule 404(b) analysis.  *Kupfer*, 797 F.3d at 1238.

The Government argues that the events it describes are intrinsic because the charged conduct "was not an isolated incident but a culmination of five years of harassment and violence perpetrated with a singular focus."  Dkt. No. 52 at 8.  The Government argues that without the described events, the jury will be "left with an incomplete picture that fails to adequately show the depths of Little's obsession with Watkins and his motivations for killing Weatherford."  *Id.*

The Court agrees.  The charged conduct occurred in the context of a tumultuous history between Defendant and Watkins, and Defendant clearly was antagonistic to Watkins' romantic partners.  Defendant's appearance at Hong's residence at 4:00 a.m. after tracking Watkins' phone is not reasonable behavior, nor is Defendant's suspicious behavior directly before Lackey discovered his brakes were cut.  Defendant's distribution of unsolicited nude photographs of Watkins to Mitchell and his friends was potentially criminal[5] and undeniably inappropriate. Defendant's statement to Watkins that "friends" of Defendant sabotaged her vehicle because they were upset that Watkins and Defendant were not together indicates that Defendant was at the very least complicit in this behavior through knowledge, participation, and/or acquiescence.  And Defendant himself described appearing at Hong's residence and being accused of cutting Lackey's brakes, although he denied responsibility for the cut brake lines.  Defendant also described another instance of past antagonism to one of Watkins' boyfriends, where he said he almost shot Watkins and her partner with his pistol but refrained for the sake of his son.  Taken together, these events

---

[5]  This type of behavior, commonly known as "revenge porn," has been criminalized in at least forty-six (46) states, including Oklahoma.  *See* Ruobing Su, Tom Porter, & Michelle Mark, *Here's a map showing which US states have passed laws against revenge porn — and those where it's still legal*, BUSINESS INSIDER (Oct. 30, 2019), https://www.businessinsider.com/map-states-where-revenge-porn-banned-2019-10.

are necessary to provide the jury with background and context of the nature of Defendant's relationship to Watkins and, in turn, Weatherford.  They are admissible at trial so long as a proper foundation is laid.[6]

Because this evidence of Defendant's antagonism toward Watkins and her boyfriends is intrinsic, a Rule 404(b) analysis is not necessary.  However, the Court must still consider Rule 403 and whether the evidence's probative value is substantially outweighed by unfair prejudice.

"[O]ur law favors admission of all relevant evidence not otherwise proscribed [and] exclusion under [Rule 403] is an extraordinary remedy that should be used sparingly."  *Irving*, 665 F.3d at 1213 (emphasis removed); *Murry*, 31 F.4th at 1291 (same).  "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case."  *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted).  Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.* "In weighing the probative value of evidence against unfair prejudice, district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Murry*, 31 F.4th at 1291 (internal quotations omitted).

Affording the evidence the weight it must, the Court is confident that Rule 403 does not bar admission of this intrinsic evidence.  The evidence is highly probative of Defendant's ongoing hostile actions toward Watkins' romantic partners.  While prejudicial, the evidence is not unfairly so, because the emotional impact of the evidence is directly related to its relevancy:   it

---

[6]  As two non-exhaustive examples, the Government will need to lay a foundation that Lackey's brakes were working normally before Defendant went outside and returned with a dirty back, as well as a timeframe for the revenge porn messages Defendant sent.

demonstrates that Defendant stalked and obsessed over Watkins and her boyfriends despite Watkins' desire to not be in a romantic relationship with Defendant.  The evidence is admissible.[7]

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion to preclude the Government's proffered 404(b) evidence [Dkt. No. 67] is GRANTED IN PART AND DENIED IN PART. Specifically, the Government MAY NOT introduce evidence of Hong's cut tires, Watkins' car fire, or the shooting of Weatherford's bedroom window.  With proper foundation, the Government MAY introduce evidence of Defendant appearing at Hong's residence, Defendant's odd behavior and dirty back immediately before Lackey discovered his brakes were cut, Defendant sending revenge porn of Watkins, and Defendant telling Watkins that friends of his put water in her car's gas tank.

DATED this 4th day of November 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[7]  The Court notes that, even if it considered the evidence to be extrinsic rather than intrinsic, it would still be admissible under Rule 404(b).  The Rule allows evidence to be admitted to demonstrate motive.  Defendant's actions illustrate ongoing and escalating jealousy, which could provide motive to him to kill Weatherford.