IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JUSTIN DALE LITTLE,

        Defendant.

Case No. 4:21-cr-00162-MWM

**OPINION AND ORDER**

**MOSMAN, J.,**

A jury convicted Justin Little of first-degree murder in November 2022 for killing Johnathon Weatherford, his wife's boyfriend, on the Muscogee Creek Reservation. *United States v. Little*, 119 F.4th 750, 765–66 (10th Cir. 2024). The Tenth Circuit affirmed Little's conviction on direct appeal and the Supreme Court denied relief. *Id.* at 787; *United States v. Little*, 25-5015 (U.S.). This matter comes before me on Little's Motion for New Trial under Federal Rule of Criminal Procedure 33. Mot., [ECF 139]. Little argues that he is entitled to relief based on the government's suppression of *Brady* material. *See generally id.* As discussed below, I deny his Motion.

///

///

///

1 – Opinion and Order

## BACKGROUND

### I.  Little's Relationship with Hannah Watkins

Little dated Hannah Watkins for several years and they had a child together. *Little*, 119 F.4th at 764. In early 2015, Watkins ended their romantic relationship and started seeing other men. *Id.* In November 2017, Watkins began dating Weatherford. *Id.* at 765.

About four months later, in March 2018, Little purchased a 783 Reminton .300 Winchester Magnum rifle. *Id.* In April 2018, Watkins told Little that she was serious about Weatherford and planned to stay with him for the rest of her life. *Id.* Nonetheless, Watkins married Little on April 19, 2019, because she believed Little when he told her that "their son could only receive military benefits if he and Watkins were married." *Id.* Three days later, on April 22, 2028, Little called Watkins to say he was running late for a planned visit to her apartment in Jenks, Oklahoma. *Id.*

### II.  The Shooting and Investigation

At about the same time that Little called Watkins, Weatherford left Watkins's apartment and walked down railroad tracks near a high school aquatic center. *Id.* Weatherford was found shot and killed with a gunshot wound to the back on the railroad tracks around 12:00p.m. *Id.*; *see also*, [ECF 139] at 2 (citing [ECF 92] at 131]). Little arrived at Watkins's apartment at around 12:10p.m., and "Watkins noticed nothing out of the ordinary." [ECF 139] at 3 (citing [ECF 92] at 94); *see also Little*, 119 F.4th at 765.

Jenks police department Assistant Chief Melissa Brown[1] came to the crime scene where Weatherford was killed and started the investigation. *Little*, 119 F.4th at 765. "Officer Jason Weis was heavily involved in all aspects of the investigation." [ECF 139] at 4. Surveillance footage from

---

[1] Little's Motion identifies Brown as "Sergeant Melissa Brown, the lead detective." [ECF 139] at 3. This Opinion and Order refers to Brown as Assistant Chief Brown.

2 – Opinion and Order

various locations near the crime scene identified a white Chevy Silverado resembling Little's truck, which was also a white Chevy Silverado, in the area around the time of shooting. *Little*, 119 F.4th at 765. Specifically it "showed Little's truck turning into the aquatic center parking lot, driving to a nearby industrial lot, and parking moments before a gunshot could be heard on the footage." *Id.* The footage showed a person in dark clothing following Weatherford as he walked along the railroad tracks near where Little parked. *Id.*

No one saw the shooting, but Watkins suggested Little as a suspect. [ECF 139] at 3. Other individuals also told investigators that they suspected that Little shot Weatherford. *Id.*; *see also Little*, 119 F.4th at 765 ("[M]ultiple people came to the police station and told police about prior incidents between Weatherford and Little."). Oklahoma state officers arrested Little later that day. [ECF 139] at 4 (citing [ECF 92] at 95–96). Assistant Chief Brown and Officer Weis interrogated Little, who waived his *Miranda* rights. *Id.* (citing [ECF 96] at 62). After Assistant Chief Brown and Officer Weis "lied to him" about evidence implicating him in the shooting, Little admitted that he was in the area and heard a gunshot. *Id.* According to Little, Assistant Chief Brown and Officer Weis then "employed intimidation tactics" where Officer Weis "smacked Little's hand and demanded a confession." *Id.* (citing [ECF 72-1], Suppression Hrg Ex. G at 33:30–34:05). The interview continued the next morning without Officer Weis. *Id.* (citing ECF 72-1], Suppression Hrg. Ex, I at 10:00–10:35).

### III.    The Convictions and Direct Appeal

A Tulsa County jury convicted Little of first-degree murder in 2020. *State of Oklahoma v. Justin Dale Little*, CF-2018-1700 (Tulsa Cnty., Okla.). The state court vacated Little's conviction after the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), and the United States charged Little with first-degree murder in April 2021. [ECF 139] at 5 (citing [ECF 2]).

I denied Little's motion to suppress evidence, including his interrogation by Assistant Chief Brown and Officer Weis. *See Little*, 119 F.4th at 766, 774–75 (discussing the motion). I held a two-and-a-half-day trial in November 2022. [ECF 139] at 5 (citing [ECF Nos. 92 and 94]). To prove its case, the government offered circumstantial evidence that Little shot Weatherford, including, among other things, "the history between Little and Watkins to establish [Little's] motive and intent," which included Little's frequent efforts to interfere with Watkin's romantic relationships after breaking up with him. *Id.* (citing [ECF 52] at 11–12); *Little*, 119 F.4th at 764–65. After jury returned a guilty verdict, I imposed a mandatory life sentence. [ECF 139] at 5 (citing [ECF Nos. 101 and 110]). The Tenth Circuit affirmed Little's conviction, *Little*, 119 F.4th at 787, and the Supreme Court denied Little's petition for a writ of certiorari. *Little*, 25-5015.

## IV.    Assistant Chief Brown's Memo Regarding Officer Weis

While Little's direct appeal was pending in the Tenth Circuit, his defense team learned that Assistant Chief Brown had created a memorandum about Officer Weis's disciplinary issues sometime between Officer Weis interrogating Little and September 2018. Ex. A, [ECF 139-1]. The memorandum listed multiple things, including contacting the media after being asked to stop, failure to book property "in almost every case," failing to properly complete investigative reports, not working his assigned juvenile and neglect cases, focusing too much on online predator cases, and "showing signs of anger with suspects." *Id.* The memorandum detailed that Little's interview "had to be stopped due to Weis['s] outburst," which happened because "Weis was frustrated that [Little] wasn't confessing to the crime." *Id.* at 3. She noted that "Weis was clearly angry" at Little just before Officer Weis slapped Little's hand when Little reached for a pen. *Id.*

Little's federal defense team learned about the memorandum when Little's counsel from his original state court prosecution, Jason Lollman, contacted Little's federal defense team in

4 – Opinion and Order

2024—around two years after Little's federal trial—to ask if the defense team knew about the memorandum. [ECF 139] at 6. Lollman had learned about the memorandum after a Tulsa County Public Defender received it in 2019 in response to an open records request to the Jenks city attorney for Officer Weis's file—specifically for *Giglio* evidence that would cast doubt on Officer Weis's credibility as a prosecution witness. *Id.*

The Government did not disclose the memorandum to Little's federal trial counsel. [ECF 139] at 8. Little argues that this failure warrants granting his Motion for a new trial because the government suppressed material, "favorable *Giglio* and *Brady* information about Officer Weis's gross misconduct while investigating this and other cases." *Id.* at 9.

## DISCUSSION

### I.      Legal Standard

To succeed on his motion for a new trial based on an alleged *Brady* violation, Little "must show by a preponderance of the evidence 'that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.'" *United States v. Cordova*, 25 F.4th 817, 826 (10th Cir. 2022) (quoting *United States v. Ahrensfield*, 698 F.3d 1310, 1319 (10th Cir. 2012)). For evidence to be "favorable to the defendant," it must either be exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 825 (10th Cir. 1995) (second *Brady* factor requires proof that the evidence at issue was exculpatory to the defendant). Material means "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cordova*, 25 F.4th at 826 (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). "Reasonable Probability means that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Id.* (quotation omitted).

5 – Opinion and Order

## II.    Brady Violation

As an initial matter, I agree with the government that the Tenth Circuit has not applied *Brady*'s disclosure requirements to suppression hearings. *See United States v, Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021) (reaffirming that "'[w]hether *Brady*'s disclosure requirements even apply at the motion to suppress stage is an open question'" (quoting *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256, n.2 (10th Cir. 2013)). Here, however, I find no due process violation at either the motion to suppress stage or at trial. Even if Little could establish that the government suppressed the memorandum, he cannot prove the second or third *Brady* factors.

### A.    Favorable Nature of the Evidence

Little cannot establish that it is more likely than not that Assistant Chief Brown's memorandum was favorable—exculpatory or impeachment evidence. *See Smith*, 50 F.3d at 825. Little's conclusory statement that the memorandum was impeaching does not explain how he could have used it for impeachment purposes either at the suppression hearing or at trial. [ECF 139] at 8. As the government points out, because Officer Weis did not testify, the memorandum was not admissible to impeach his testimony or actions, and the specific documents/evidence that Little lists in his Motion were not admitted at trial. [ECF 144] at 7; *compare* [ECF 139] at 12 (listing what Officer Weis for the investigation) *with* Witness List for Trial, Exhibit List for Trial, [ECF 99-1] (listing witnesses and exhibits offered at trial). Accordingly, he fails to meet his burden to show the memorandum was favorable as impeachment evidence. *See Cordova*, 25 F.4th at 826.

Little's assertion that the memorandum is exculpatory similarly lacks support. He appears to assert that the memorandum was favorable to him because it supported his trial strategy of discrediting the investigation. [ECF 139] at 11–13. It showed that "a main investigative officer was committing gross misconduct while investigating this case and others around the same time"

6 – Opinion and Order

and discredited the Jenks police department's investigation. *Id.* While the memorandum arguably provides many reasons to discipline Officer Weis, it does not tend to clear Little of guilt. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (describing exculpatory evidence as "favorable to an accused" such that "if disclosed and used effectively, it may make the difference between conviction and acquittal"). Many of Weis's disciplinary issues—unauthorized media contact, not working assigned cases, not creating calls for service for new online chats, continuing to work online predator cases—are irrelevant to the shooting investigation and would not have exculpated Little. *See* [139-1]. To the extent that the memorandum called into question Officer Weis's investigation practices, the evidence gathered by Officer Weis was either not offered at trial or corroborated in other ways. For example, the witnesses whose statements Officer Weis took did not testify at trial and multiple other sources confirmed the shooting's timeline. *Compare* [ECF 99-1] *with* [139-4]; *see also Little*, 119 F.4th at 765 (officers "determined that the shooting happened around 11:55a.m. after speaking to over thirty people"). In short, Little has not shown how evidence of Officer Weis's alleged misconduct would have been favorable to Little at trial. *See Bagley*, 473 U.S. at 676.

### B.      Materiality

Even if Little could show that the memorandum was favorable to him, he cannot show that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *see also Cordova*, 25 F.4th at 826 (the third *Brady* factor requires showing a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different"). Little already had evidence of Officer Weis's behavior during his interrogation; therefore, the details about Officer Weis's anger issues related to Little are immaterial because they are cumulative. *See United States*

*v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999); *see also* [144] at 4 (citing [ECF 56]) ("[T]he entire interaction between Weis and Little was captured on video and provided to the district court."). Little likewise cannot establish that the other evidence from the memorandum was material with his vague assertions that he could have used it "to undermine the government's evidence about the thoroughness and integrity of its investigation" or when cross examining Assistant Chief Brown." [ECF 147]. *See Cordova*, 25 F.4th at 826. The government's evidence at trial, although circumstantial, was considerable, and as discussed above, much of the information gathered by Officer Weis was validated in other ways. *see e.g.*, *Little*, 119 F.4th at 764–65, 778–80, 784–85 (discussing the government's evidence). Accordingly, Little cannot show a reasonable probability that the outcome of his trial would have been different had he only had the memorandum. *Cain*, 565 U.S. at 75. Because none of Little's arguments shake my confidence in the guilty verdict, I find that the memorandum detailing Officer Weis's disciplinary issues is not material. *See Kyles*, 514 U.S. at 435 (1995).

### C.    Evidentiary Hearing

Finally, I find that Little has not established that he is entitled to additional fact development regarding the issues raised in the memorandum. As discussed above, the evidence gathered by Officer Weis was either not used at trial or corroborated by other sources. Little has not made specific allegations that "show reason to believe" that gathering evidence of other instances where Officer Weis showed anger, improperly contacted the media, failed to work his assigned caseload, conducted stings and served warrants without authorization, or failed to properly complete reports or book property may, "if fully developed, be able to demonstrate that he is entitled to a new trial." *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007)

8 – Opinion and Order

(quotations omitted). Accordingly, I deny Little's request for a hearing and additional fact discovery.

## CONCLUSION

I deny Little's Motion for New Trial Under Federal Rule of Criminal Procedure 33. [ECF 139].

IT IS SO ORDERED.

DATED this 22d day of April, 2026.

MICHAEL W. MOSMAN
United States District Judge

9 – Opinion and Order